**Vasili TSERETELI, et al., Plaintiffs,**

v.

**RESIDENTIAL ASSET SECURI-TIZATION TRUST 1006–A8, et al., Defendants.**

**No. 08 Civ. 10637(LAK).**

United States District Court, S.D. New York.

March 24, 2010.

James Abram Harrod, III, Lester L. Levy, Sr., Robert Scott Plosky, Wolf Popper LLP, New York, NY, for Plaintiffs.

Robert F. Serio, Aric Hugo Wu, Gibson, Dunn & Crutcher LLP, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, District Judge.

On March 11, 2010, the Court issued a memorandum opinion[1] granting in part

---

**1.** *Tsereteli v. Residential Asset Securitization* Trust 2006–A8, No. 08 Civ. 10637(LAK), 692

and denying in part defendant Credit Suisse Securities (USA) LLC's ("Credit Suisse") motion to dismiss the complaint for failure to state a claim. In a March 18, 2010 letter to the Court,[2] plaintiffs expressed concern about the Court's characterization of an aspect of their pleading as "exceptionally misleading."[3] As the letter no doubt is a prelude to an appeal, this memorandum responds to it so that the Court of Appeals will have the benefit of this Court's views of the arguments there advanced.

The amended complaint alleged, *inter alia*, that the Offering Documents at issue were misleading because IndyMac Bank stated it appraised collateral property in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP") but had not done so. To support that claim, the pleading referred to, but did not attach, a report by the Treasury Department, Office of Inspector General ("OIG"),[4] which, according to plaintiffs, found that IndyMac Bank's appraisals "were 'not in compliance with the Uniform Standards of Professional Appraisal Practice (USPAP).' "[5]

Plaintiffs' "concern" with the court's characterization of the pleading as "exceptionally misleading" appears to have two bases. First, they note that the twenty-two loans examined in the OIG Report "were not just any twenty-two loans," but rather a "representative sample" of Indy-Mac Bank's loans.[6] Second, they believe that there were other allegations in the amended complaint that sufficiently alleged that IndyMac Bank's appraisals did not comply with USPAP.

Plaintiff's first basis of concern has no merit as there are no allegations in the amended complaint from which plausibly to infer that the twenty-two loans examined in the OIG Report were in any way representative of the loans underlying the securities at issue in this case. First, the loans at issue here are not within the universe of loans the OIG examined. To prepare its report, the OIG inspected twenty-two out of the 63,935 loans in Indy-Mac Bank's loans held to maturity portfolio as of August 31, 2008.[7] The held to maturity portfolio was made up of loans that IndyMac Bank was unable to securitize or sell.[8] By contrast, IndyMac Bank securitized and sold the loans underlying the mortgage backed securities in this

---

F.Supp.2d 387, 395–96, 2010 WL 816623, at *6 (S.D.N.Y. Mar. 11, 2010).

2. Letter from Lester L. Levy, Mar. 18, 2010 (hereinafter "Levy Letter").

3. *Tsereteli*, 692 F.Supp.2d at 393–94, 2010 WL 816623, at *4.

4. OIG, Audit Report (OIG–09–032), *Safety and Soundness: Material Loss Review of Indy-Mac Bank, FSB*, February 26, 2009, at 2, 7, *available at* http://treasury.gov/inspector-general/audit-reports/2009/oig09032.pdf (the "OIG Report").

5. Am. Cpt. ¶ 70. Also quoting from the OIG Report, plaintiffs allege that IndyMac Bank's appraisal practices contained "weaknesses" and were "often questionable." *Id.*

6. Levy Letter at 1. The Court notes that the OIG Report nowhere describes the twenty-two loans it examined as a "representative sample" of IndyMac Bank's loans as plaintiffs contend in their letter. Rather, the OIG "judgmentally sampled" the loans, which it described as "a cross-section of the loan products in IndyMac's loans held to maturity portfolio." OIG Report at 11, 39.

7. *Id.* at 39.

8. *See id.* at 41 ("Starting in the third quarter of 2007, IndyMac was unable to sell or securitize its loan production. As a result, $10.7 billion of loans that it intended to sell remained on its own books in its held to maturity account.").

case.[9] There is nothing in the amended complaint to suggest that there is any reasonable basis for assuming that reliance on OIG conclusions about loans in the held to maturity portfolio have any bearing on those underlying the Certificates at issue here.

Second, even assuming *arguendo* that the loans underlying the securities at issue in this case were sufficiently like the loans in the held to maturity portfolio, the inferences plaintiffs seek are neither plausible nor reliable given the OIG Report's small sample size. The reliability of a statistical sample of a given population is directly related to the size of the analyzed sample in relation to the size of the entire population.[10] Where, as here, a sample size of twenty-two was used to analyze a population of 63,935, any conclusions drawn from the sample have a high risk of error[11] and the results may be attributable to random chance.[12]

Third, as noted in the memorandum opinion,[13] whatever the possible relevance of the OIG Report, the amended complaint's allegations were misleading. Plaintiffs alleged, quoting the OIG Report, that the loans underlying the Certificates were based on appraisals that "were 'not in compliance with the Uniform Standards of Professional Appraisal Practice.'"[14] In doing so, they elided the first portion of the sentence, which stated that the OIG's examination had noted "instances" of nonconforming appraisals. The full text of the sentence shows that the OIG's finding was significantly narrower than the misleading quotation that plaintiffs presented.[15]

Plaintiffs' second "concern" is baseless as well. The Court considered each of the allegations in the amended complaint referred to in plaintiffs' letter prior to issuing its memorandum opinion and found them insufficient to state a claim. While the allegations may allege that IndyMac Bank used poor business judgment or risk analysis, they do not, without further factual amplification, give rise to a plausible inference that its appraisals on the loans at issue in this case were inconsistent with USPAP.

For the foregoing reasons, the Court reaffirms the memorandum opinion's characterization of these allegations as misleading and its result.

SO ORDERED.

---

9. Am. Cpt. ¶¶ 21–22. Plaintiffs argue in their letter that the loans underlying the Certificates "likely ... would have been among those in the held to maturity portfolio" had the secondary market for loans frozen in 2006 rather than 2007. Levy Letter at 2. Conclusory, hypothetical speculation of this sort, even were it in the amended complaint, is not entitled to an assumption of truth on a motion to dismiss. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

10. *See generally* TARO YAMANE, STATISTICS: AN INTRODUCTORY ANALYSIS 251–57 (2d ed. 1964).

11. *See id.* at 253 (noting "good chance" of error when sample of thirty-six is used to evaluate population of 2,000).

12. *See generally* W. ALLEN WALLIS & HARRY V. ROBERTS, THE NATURE OF STATISTICS 123–40 (1962).

13. *Tsereteli,* 692 F.Supp.2d at 393–94, 2010 WL 816623, at *4.

14. Am. Cpt. ¶ 70.

15. "We also found weaknesses with property appraisals obtained to support the collateral on the loans. For example, among other things, we noted instances where IndyMac officials accepted appraisals that were not in compliance with the Uniform Standard of Professional Appraisal Practice (USPAP)." OIG Report at 11–12.